UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BMO Bank N.A.,<br><br>     Plaintiff,<br><br> v.<br><br>RAIDEN, llc, a Washington limited liability company; and MIKHAIL GOIMAN a/k/a MIHAI GOIMAN and the marital community composed of MIKHAIL GOIMAN and JANE or JOHN DOE GOIMAN,<br>     Defendants. | CASE NO. 23-cv-01465<br><br>ORDER GRANTING TEMPORARY RESTRAINING ORDER |

**I**

**INTRODUCTION**

This matter comes before the Court on Plaintiff's motion for a temporary restraining order ("TRO"). Dkt. # 12. Plaintiff appears to be moving ex parte.[1] *See* Dkt. # 14. Plaintiff

---

[1] "Unless the requirements of Fed. R. Civ. P. 65(b) for issuance without notice are satisfied, the moving party must serve all motion papers on the opposing party, by electronic means if available, before or contemporaneously with the filing of the motion and include a certificate of service with the motion." LCR 65(B)(1). Plaintiff did not include a certificate of service with their motion for TRO. Dkt. # 12. In Plaintiff's amended attorney certification in support of motion for temporary restraining order, counsel states reasons for why notice is not required under "LCR 65(b)(1)(B)." Dkt. # 14 at 2. "LCR 65(b)(1)(B)" does not exist. *See* LCR 65. Presumably, Plaintiff is referring to LCR 65(b)(1), which covers ex parte TROs.

ORDER GRANTING TEMPORARY RESTRAINING ORDER - 1

requests the Court restrain Defendants from "taking any further action to transfer, spend or otherwise disburse the Funds identified in the Motion until Order of Court."  Dkt. # 12-1.  Having reviewed the motion and all related papers, as well as the applicable law, the Court GRANTS the motion.

## II

### BACKGROUND

Plaintiff BMO Bank N.A. (BMO) brought suit against Defendants Raiden LLC (Raiden) and Mikhail Goiman a/k/a Mihai Goiman (Goiman) for unjust enrichment, conversion, accounting and a temporary restraining order.  Dkt. # 1 at 1.  Raiden is a single-member LLC with Goiman as its sole member.  Dkt. # 1 at 4.  On November 1, 2022, BMO wired $982,733.00 ("Funds") to Raiden LLC's account at Bank of America, N.A.  Dkt. # 1 at 2.  In their verified complaint, BMO states it did not intend to transfer the Funds to Raiden's account, the transfer was a mistake, and Defendants had no right to receive nor any legal right to retain the funds.  Dkt. # 1 at 2–3.   On August 21, 2023, via an email from Goiman's counsel, Nathan Thomas, on behalf of Goiman, Attorney Thomas stated that Mr. Goiman "had no business dealings with BMO in the past[;]" "that Mr. Goiman cannot refund the full balance of the funds at this time[;]" that on advice from his bank to "break the large balance into smaller balances of less than $200,000 so as to be protected by the FDCIA […] the funds were disbursed to several smaller accounts[;]" and "the LLC began to use the funds for business purposes."  Dkt. # 1 at 3, 10.  BMO states that it never authorized Raiden to spend or disburse any of the Funds and, upon discovery of the transfer, contacted Defendants to facilitate the return.  Dkt. # 1 at 3.  Despite its attempts, BMO states that no funds have been returned by Defendants.  Dkt. # 1 at 3–4.

ORDER GRANTING TEMPORARY RESTRAINING ORDER - 2

# III

## DISCUSSION

The legal standards that apply to injunctions apply to TROs as well. *Stuhlbarg Int'l Sales Co v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (preliminary injunction and temporary restraining order standards are "substantially identical."). A TRO is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008). To obtain a TRO, Plaintiffs must show that they are (1) likely to succeed on the merits, (2) likely to suffer irreparable harm without preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). The first two factors are the most critical. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

A.      Issuance of TRO Without Notice.

"Motions for temporary restraining orders without notice to and an opportunity to be heard by the adverse party are disfavored and will rarely be granted." LCR 65(b)(1). A court may issue a temporary restraining order without notice to the adverse party and an opportunity for them to be heard only if the requirements of Fed. R. Civ. P. 65(b) are satisfied by Plaintiff. LCR 65(b)(1); *see Kyko Glob., Inc. v. Prithvi Info. Sols., Ltd.*, No. 13-cv-1034, 2013 WL 12173381 (W.D. Wash. June 19, 2013); *Methinx Ent., LLC v. Ent. Magpie Ltd.*, No. 2:21-CV-01049-RAJ, 2021 WL 3510378, at *2 (W.D. Wash. Aug. 10, 2021).

Federal Rule of Civil Procedure 65(b) outlines two requirements for a court to issue a TRO without notice to the adverse party: first, "specific facts in an affidavit or a verified complaint [must] clearly show that immediate and irreparable injury, loss, or damage will result

ORDER GRANTING TEMPORARY RESTRAINING ORDER - 3

to the movant before the adverse party can be heard in opposition[,]" and second, "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

Ex parte TROs "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 438–39 (1974).

Circumstances justifying the issuance of an ex parte order are limited and courts have generally confined ex parte injunctive relief to two situations. *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).  First, an ex parte TRO may be appropriate "where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing." *Id.*  Second, when notice could be given to the adverse party, courts have recognized "a very narrow band of cases in which ex parte orders are proper because notice to the defendant would render fruitless the further prosecution of the action." *Id.*  To justify an ex parte TRO on this ground, the applicant must "show that defendants would have disregarded a direct court order and disposed of the goods within the time it would take for a hearing ... [and] must support such assertions by showing that the adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a history." *Id.*

Plaintiff certified their attempts to provide notice to Defendants.  Dkt. # 14 at 1–2. Plaintiff's attorney emailed notice of the Motion for TRO, the underlying verified complaint, and all other pleadings filed in this matter to date to Nathan Thomas, Goiman's last known attorney. Dkt. # 14 at 1–2.  Plaintiff's attorney also copied the email address associated with Raiden in its

ORDER GRANTING TEMPORARY RESTRAINING ORDER - 4

last filed annual report.  Dkt. # 14 at 2.  Finally, Plaintiff's attorney stated their intent to forward all pleadings in this matter filed to date, including the Motion for TRO, for personal service on Defendant Raiden, LLC and Mr. Goiman on October 4.  Dkt. # 14 at 2.  Plaintiff further certified the reasons why notice should not be required:

> Defendants are very likely to continue to abscond of funds prior to any scheduled hearing given that they have already admitted in writing through Nathan Thomas that they have moved the funds transferred to them from BMO that they knew did not belong to them.  Waiting a full month for a hearing on an injunction will only exacerbate the irreparable harm caused to BMO by allowing Defendants to continue to move said funds.

Dkt. 14 at 2.  To support its motion for an ex parte TRO, Plaintiff points to August 31, 2023, email from Attorney Thomas written on behalf of Goiman which states that "Mr. Goiman had no business dealings with BMO in the past[;]" "that Mr. Goiman cannot refund the full balance of the funds at this time[;]" that on advice from his bank to "break the large balance into smaller balances of less than $200,000 so as to be protected by the FDCIA […] the funds were disbursed to several smaller accounts[;]" and "the LLC began to use the funds for business purposes."  Dkt. # 1 at 3, 10.

This case falls within the narrow band of cases in which an ex parte TRO may be granted. Plaintiff offers specific and concrete evidence showing an immediate and irreparable injury, loss, or damage will result if a decision on the TRO was withheld until notice and an opportunity for defendants to be heard occurs.  The evidence indicates that Defendants have already transferred some of the funds to smaller accounts on advice from their bank and began spending the funds for business purposes.  Dkt. # 1 at 10.  As a result, Defendants "cannot refund the full balance of the funds at this time." Dkt. # 1 at 10.  Given these admissions, and to prevent further disbursal or spending of these Funds, Plaintiff asserts that notice should not be required.  Dkt. # 14 at 2.

ORDER GRANTING TEMPORARY RESTRAINING ORDER - 5

The Court agrees.  And the Court finds a significant risk that irreparable injury would result if the status quo were not maintained.  *See Kyko Global, Inc.*, 2013 WL 12173381, at *3.

B.     Plaintiff Meets TRO Requirements.

   1.     Likelihood of success on the merits.

As to the first factor, BMO brings three causes of action against Defendants: unjust enrichment, conversion, and equitable accounting.  Dkt. # 1 at 4–6.

To succeed on an unjust enrichment claim under Washington law, Plaintiff must demonstrate (1) the defendant received a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment.  *Young v. Young*, 191 P.3d 1258, 1262 (2008); *Samra v. Singh*, 479 P.3d 713, 722–724 (Wash. Ct. App. 2020) (holding that claimants of unjust enrichment must present evidence proving they conferred a benefit on the allegedly unjustly enriched party).  In its verified complaint, Plaintiff points to Defendants' statement that it was spending the Funds "for business purposes," that Defendants received these Funds from Plaintiff when it was inadvertently transferred to Raiden's account on November 1, 2022, and that it would be unjust for Defendants to retain these Funds considering they have no right to receive nor any legal right to retain the Funds.  Dkt. # 7–35.  Given this, the Court finds Plaintiff is likely to succeed on the merits of its unjust enrichment claim.

Under Washington law, conversion "occurs when a person intentionally interferes with chattel belonging to another, either by taking or unlawfully retaining it, thereby depriving the rightful owner of possession."  *Alhadeff v. Meridian on Bainbridge Island, LLC*, 220 P.3d 1214, 1223 (Wash. 2009).  "Money may be the subject of a claim for conversion if the defendant

ORDER GRANTING TEMPORARY RESTRAINING ORDER - 6

wrongfully received it." *Id.* In its verified complaint, Plaintiff states that the Funds were wired to Raiden's Account unintentionally and by mistake. Dkt. # 1 at 2–3. Plaintiff also states that Defendants had no right to receive nor any legal right to retain any of the Funds. Dkt. # 1 at 3. Despite Plaintiff's stated attempts to retrieve the funds, it has been unable to do so. Dkt. # 1 at 3–4. Since the transfer, Defendants have stated that they have disbursed the funds into "several smaller accounts" and the LLC "began to use the funds for business purposes." Dkt. # 1 at 10. Defendants told Plaintiff that they "cannot refund the full balance of the funds at this time." Dkt. # 1 at 10. The Court finds Plaintiff is likely to succeed on the merits of its conversion claim.

To succeed on an equitable accounting claim under Washington law, Plaintiff must show that (1) "a fiduciary relation existed between the parties, or that the account is so complicated that it cannot conveniently be taken in an action at law[,]" (2) "the plaintiff has demanded accounting from the defendant," and (3) the defendant has "refus[ed] to render it[.]" *Corbin v. Madison*, 529 P.2d 1145, 1152–52 (Wash. Court of Appeals, 1974) (quoting *State v. Taylor*, 58 Wash.2d 252, 262 (Wash. 1961)). Goiman has had no business dealings with BMO in the past. Dkt. # 1 at 10. Plaintiff states that neither Goiman nor Raiden have been customers of BMO. Dkt. # 1 at 3. Instead, Plaintiff asserts that the account is "complicated" because, as stated by Goiman's attorney, the Funds have been "disbursed to several smaller accounts" and some have been used by Raiden for "business purposes." Dkt. # 10 at 10. Additionally, Plaintiff has stated that it demanded an accounting of the Funds from Defendants and Defendants have refused to provide BMO with an accounting of the funds. Dkt. # 10 at 5. The Court finds Plaintiff is likely to succeed on the merits of its equitable accounting claim.

ORDER GRANTING TEMPORARY RESTRAINING ORDER - 7

2.  Irreparable harm.

Plaintiff must establish that they are "likely to suffer irreparable harm before a decision on the merits can be rendered." *Winter*, 555 U.S. at 22. The Ninth Circuit has held that district courts have the "authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment." *In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1480 (9th Cir. 1994). There is sufficient likelihood of irreparable injury if the requested TRO is not granted. While there is no evidence of insolvency, Plaintiff has sufficiently established that Defendants have already begun dissipating and spending the Funds. According to Plaintiff's TRO motion, "Defendants have admitted that (1) they have already spent a significant portion of the Funds and (2) although they cannot return the entirety of the Funds to BMO at this time, there are still additional funds in Defendants' possession." Dkt. # 12 at 5. Moreover, Goiman has stated that they "had no business dealings with BMO in the past." Dkt. # 1 at 10. Given that these funds originated with BMO, were mistakenly and unintentionally transferred to Defendants, and that Defendants have no right to receive nor legal right to retain these Funds; and Defendant's admission that funds have already been disbursed to several smaller accounts or used by Raiden for business purposes, there is reason to believe that BMO will likely suffer irreparable harm without preliminary relief. Dkt. # 1 at 4–10.

3.  Balance of equities.

In assessing whether a plaintiff has met its burden of establishing that the balance of equities tips in its favor, the "district court has a duty … to balance the interests of all parties and weigh the damage to each." *Stormans, Inc.*, 586 F.3d at 1138. According to Plaintiff's verified

complaint, the Funds were mistakenly transferred to Defendants, Defendants do not have right to receive nor legal right to retain the Funds, and Defendants have not returned the transferred funds. Dkt. # 1 at 2–3. Therefore, prohibiting Defendants from transferring, spending, or otherwise disbursing the Funds identified in the motion until the Court can conduct a hearing is not inequitable to Defendants.

        4.       Public interest.

"When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis rather than one that favor[s] [granting or] denying the preliminary injunction." *Stormans, Inc.*, 586 F.3d at 1138–39 (9th Cir. 2009) (internal quotation marks omitted) (citing *Bernhardt v. L.A. Cnty.*, 339 F.3d 920, 931 (9th Cir. 2003)). The requested TRO is limited to the parties in this case as it only prevents Defendants from transferring, spending, or otherwise disbursing the Funds. Dkt. # 12-1. There is no impact on the public. This factor therefore does not way in favor or against granting the TRO.

## IV

### Conclusion

IT IS HEREBY ORDERED THAT Plaintiff's Motion for Temporary Restraining Order is GRANTED. Raiden, LLC and Mikhail Goiman aka Mihai Goiman are hereby restrained from taking any further action to transfer, spend, or otherwise disburse the Funds identified in the Motion until further Order of Court. Failure of Defendants to abide by this order by disbursing any Funds traceable to Plaintiff's funds that were deposited into Defendants' accounts shall be in contempt of court and will result in sanctions;

AND IT IS FURTHER ORDERED that this order be and is hereby conditioned upon Plaintiff's filing with the Clerk of this Court <u>a monetary deposit of $5,000.00 made to the Court's registry</u> no later than <u>5 p.m. on October 10, 2023</u>, to secure payment of such costs and damages not to exceed such sum as may be suffered or sustained by any party who is found to be wrongfully restrained hereby.  <u>The Clerk is directed to deposit funds into the Registry of the Court in the principal amount of $5,000.00</u>;

AND IT IS FURTHER ORDERED that Defendants Raiden, LLC and Mikhail Goiman a/k/a Mihai Goiman, show cause before the Honorable Judge John H. Chun, United States District Court Judge, in Courtroom **14A** of the United States District Court for the Western District of Washington, located at 700 Stewart Street, Seattle, WA 98101 at 1:30 p.m. on October 19, 2023, or as soon thereafter as counsel can be heard, why an order under Federal Rule of Civil Procedure 65 should not be entered granting to Plaintiff, BMO Bank N.A., a preliminary injunction enjoining the Defendants from disbursing or spending further funds from their accounts.

AND IT IS FURTHER ORDERED that service of a copy of this order granting Plaintiff's Motion for Temporary Restraining Order together with the materials submitted in this action to date be made upon the Defendants by the United States Marshal, other federal, state or local law enforcement officers or by any person over the age of eighteen (18) years not a party to this action selected for that purpose by Plaintiff, at the time the TRO provided herein is effected and such service shall be deemed good and sufficient, provided that a complete set of all moving papers submitted in support of this order shall be promptly provided to any defendant or counsel requesting the same;

ORDER GRANTING TEMPORARY RESTRAINING ORDER - 10

AND IT IS FURTHER ORDERED that Defendants' responsive papers, if any, shall be filed with the Clerk of this Court and served on the attorneys for Plaintiff by delivering copies to Plaintiff's counsel on or before Thursday, October 12, 2023.  Any reply shall be filed and served by Plaintiff on or before Wednesday, October 18, 2023;

AND IT IS FURTHER ORDERED that any defendant who is hereafter served with a copy of this order who objects to the provisions hereof may submit his or her objections to this Court or otherwise move for relief from this Court as provided herein or otherwise according to the Federal Rules of Civil Procedure, but no such objection shall serve to suspend this Order or stay the terms herein unless otherwise so ordered by this Court.

Dated this 6th day of October, 2023.

John H. Chun
United States District Judge